UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

        Plaintiff,

v.                                                                          Case No. 4:14-CV-11521
                                                                            HON. MARK A. GOLDSMITH

WARREN CHIROPRACTIC
& REHAB CLINIC P.C., et al.,

        Defendants.
_____/

**MEMORANDUM OPINION DENYING DEFENDANTS'**
**MOTIONS TO DISMISS (Dkts. 17, 20) and ORDER GRANTING PLAINTIFF'S**
**MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY (Dkt. 29)**

## I. INTRODUCTION

This is a civil insurance dispute brought under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), with additional state law claims for fraud and unjust enrichment.   Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") alleges that the Defendants — Warren Chiropractic & Rehab Clinic P.C., John Mousa Mufarreh, Keith Gover, Priority Patient Transport LLC, George Mousa Mufarreh, and Sharon Michele Smith — engaged in a concerted scheme to defraud Plaintiff through the submission of claims for medically unnecessary, and in some cases entirely unperformed, services.

Before the Court are motions to dismiss filed by the Defendants (Dkts. 17, 20).  Plaintiff filed responses (Dkts. 24, 25), and Defendants did not file replies.   The Court heard oral

1

argument on November 6, 2014, and took the motions under advisement.[1]  The Court issued an

Order on January 22, 2015 denying the motions to dismiss (Dkt. 35), and now issues this

memorandum opinion to more fully explain its reasoning for denying Defendants' motions.

## II. BACKGROUND

Plaintiff alleges that Defendants created a scheme to fraudulently obtain insurance

payments for services that were either not provided at all, or that were medically unnecessary.

Compl. ¶ 1 (Dkt. 1).  Plaintiff maintains that Defendants John Mousa Mufarreh ("J. Mufarreh")

and Keith Gover ("Gover") were responsible for the patient diagnosis and treatment, including

designing and implementing the fraudulent scheme.  Id. ¶ 2.  Plaintiff alleges that Defendant

Warren Chiropractic & Rehab Clinic P.C. ("Warren") is the entity through which J. Mufarreh

and Gover billed Plaintiff.  Id.  These three Defendants will be collectively referred to as the

"Warren Defendants" throughout this decision.

Plaintiff further claims that Defendants George Mousa Mufarreh ("G. Mufarreh") and

Sharon Michele Smith ("Smith"), in cooperation with the Warren Defendants, fraudulently

obtained payments for the transportation of patients to Warren and elsewhere that was not

medically necessary.  Id.  Priority Patient Transport LLC ("Priority") is the entity through which

---

[1] After briefing was completed, but before the motions hearing, Plaintiff filed a motion for leave
to file supplemental authority (Dkt. 29), drawing the Court's attention to Judge Levy's October
24, 2014 Opinion and Order in State Farm Mutual Automobile Insurance Co. v. Universal Health
Group, Inc., No. 14-10266, 2014 WL 5427170 (E.D. Mich. Oct. 24, 2014), which addressed
many of the same arguments raised in this case.  As part of the motion, Plaintiff certified that
"opposing counsel  . . . expressly denied concurrence" in the motion.  However, Defendants did
not file a response, nor did they raise any argument about Plaintiff's motion at the hearing.

  The Court sees no reason for Defendants' refusal to concur in Plaintiff's motion.  The Universal
Health Group, Inc. decision was issued after briefing in this case was completed, but Defendants
could have argued against the case's applicability at the hearing.  Further, Defendants suffered
no prejudice by Plaintiff bringing this decision to the Court's attention — other than the fact that
it rejected many of Defendants' arguments.  Accordingly, the Court grants Plaintiff's motion for
leave to file supplemental authority (Dkt. 29), and takes notice of Judge Levy's decision.

G. Mufarreh and Smith allegedly billed Plaintiff.   Id.   Priority, G. Mufarreh, and Smith are collectively referred to as the "Priority Defendants" throughout this decision.

Plaintiff alleges that the Warren Defendants have submitted hundreds of bills and related documentation for claimed services that either were not performed, or were performed pursuant to a "fraudulent predetermined protocol of treatment."   Id. ¶¶ 1, 3.   Plaintiff claims that this predetermined protocol "was not designed to legitimately examine, diagnose, and provide medically necessary services to address the unique needs of the individual patients."   Id. ¶ 4. Rather, according to Plaintiff, the Warren Defendants provide "the same four passive modalities . . . on virtually every visit . . . for as long as possible, regardless of [the patient's] unique conditions, needs, and progress, or lack thereof," and the "treatments are not changed based on purported reexaminations, diagnostic tests, or for any other reason."   Id. ¶¶ 3-4; see also id. ¶ 6. Plaintiff also alleges that, under the protocol, the Warren Defendants subject patients to the same "predetermined diagnoses," and consistently order unnecessary tests, such as x-rays and MRIs, that do not change the course of treatment and that are ordered regardless of patient need.   Id. ¶¶ 41, 49-51, 73-76.

Plaintiff additionally claims that, as part of the "predetermined protocol of treatment," Defendants J. Mufarreh, Gover, and other Warren employees issue pre-signed "disability certificates," which are not based on legitimate evaluations and determinations, but are nevertheless used to support insurance claims for transportation, attendant care, and/or replacement services.   Id. ¶¶ 5, 54.   As particularly relevant here, Plaintiff alleges these false disability certificates are used by the Priority Defendants — in cooperation with the Warren Defendants — to seek payment for the medically unnecessary transportation of patients.   Id. ¶¶ 5, 56-58.  Plaintiff claims Priority is not even equipped to transport disabled patients, despite

3

the fact that its business model centers on patients certified as disabled, "where [it] can get reimbursed for the transportation by insurance companies." Id. ¶¶ 58-59.

Plaintiff alleges this scheme has been in place since at least 2005, and has continued up to at least the filing of the Complaint. Id. ¶ 9. Plaintiff further claims that it "did not discover and could not have reasonably discovered that its damages were attributable to fraud until shortly before it filed this Complaint," because "[e]ach bill and its supporting documentation, when viewed in isolation, does not reveal its fraudulent nature." Id. ¶ 10.

In support of these allegations, Plaintiff attaches two spreadsheets to its Complaint showing claims submitted by Defendants. According to Plaintiff, these exhibits reveal the "predetermined protocol"— e.g., ordering unnecessary MRIs and x-rays, giving the same diagnosis (including a disability determination), and providing the same four passive modalities and "therapeutic exercise," regardless of the individual patient's need. Id. ¶¶ 3, 6, 46-78

Plaintiff brings claims against all Defendants for common law fraud, substantive RICO offense, RICO conspiracy, and unjust enrichment. It also brings a claim for declaratory judgment against the entity Defendants. Plaintiff requests monetary damages (at least $1,000,000), treble damages, costs, and attorney fees, as well as a declaratory judgment that it is not liable for any pending bills or bills submitted during the pendency of this action. Id. ¶ 11.

### III.  MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." In evaluating a motion to dismiss pursuant to Rule 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief." Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010)

(brackets, quotation marks, and citations omitted).  To survive a motion to dismiss, a complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim. Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).  A complaint will be dismissed unless, when all well-pled factual allegations are accepted as true, the complaint states a "plausible claim for relief."  Id. at 679.

In ruling on a Rule 12(b)(6) motion, a court may consider the complaint, documents incorporated by reference and central to the claims, exhibits attached to the complaint, and matters of which a court may take judicial notice.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Amini v. Oberlin College, 259 F.3d 493, 502-503 (6th Cir. 2001).

## IV.  ANALYSIS

### A.  RICO Claims

#### i.  Pleading Requirements

Plaintiff's Complaint includes claims for a substantive RICO offense and RICO conspiracy.  To state a claim under RICO, a plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Ouwinga v. Benistar 419 Plan Servs., Inc., 694 F.3d 783, 791 (6th Cir. 2012) (quotation marks and citation omitted).

Defendants argue that Plaintiff's RICO claims are insufficiently pled for a number of reasons.  First, Defendants assert that Plaintiff has not sufficiently alleged an enterprise for purposes of RICO.  Next, Defendants claim that the Complaint fails to specify how each Defendant participated in or conducted the affairs of the purported enterprise.  Third, Defendants maintain that Plaintiff's allegations of mail fraud — the underlying racketeering activity — fail to meet the particularity requirement of Federal Rule of Civil Procedure 9(b).  Fourth,

Defendants claim that Plaintiff has not met the continuity requirement for a RICO claim, because Plaintiff does not explain how this is more than an alleged single, fraudulent scheme intended to accomplish a single objective. Finally, Defendants argue that the RICO-conspiracy claim must fail, because the Complaint does not allege that each Defendant agreed that someone would commit at least two predicate acts.

The Court considers and rejects each of Defendants' arguments in turn.

### a.      Enterprise

Defendants first challenge whether Plaintiff has sufficiently alleged the existence of an enterprise. RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiff alleges that Defendants created an "association-in-fact" enterprise, i.e., the "Fraudulent Billing Enterprise." See Compl. ¶ 90.

The definition of "enterprise" is liberally construed so as to effectuate RICO's remedial purpose. Ouwinga, 694 F.3d at 794. The Sixth Circuit has explained that an enterprise requires "'a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach.'" Id. (quoting VanDenBroeck v. CommonPoint Mortg. Co., 210 F.3d 696, 699 (6th Cir. 2000), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)). The Supreme Court recently clarified what is required to show such structure in Boyle v. United States, 556 U.S. 938, 946 (2009): "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." The Supreme Court further clarified that the enterprise need not be hierarchical, can make decisions on an ad hoc basis, does not need a formal name, and does not require members to

6

have fixed roles.  Id. at 948.  Rather, a plaintiff must show "a continuing unit that functions with a common purpose."  Id.

Here, Plaintiff has set forth the necessary elements under Boyle.  First, Plaintiff claims that the enterprise's purpose was to defraud Plaintiff and obtain unwarranted insurance payments through the submission of false claims.  Compl. ¶¶ 25, 91.  Second, Plaintiff has sufficiently pled the relationships among those associated with the enterprise:

> The defendants forged symbiotic relationships and needed and depended upon the participation of the others to accomplish their common purpose of defrauding State Farm through fraudulent insurance claims.  Specifically, John Mufarreh and Keith Gover [] purport to examine and diagnose the patients, and order, perform, or direct all the medically unnecessary services at issue.  Warren [which is purportedly owned by J. Mufarreh] is the entity through which John Mufarreh and Gover submit bills and related documentation for the medically unnecessary treatment provided to patients.  Priority Transport [purportedly owned by Smith and G. Mufarreh], along with Sharon Smith and George Mufarreh, provide and bill for the medically unnecessary transportation services for Warren's patients.  The participation and role of all defendants was necessary to the success of the scheme.

Id. ¶ 91.  In addition, Plaintiff alleges that J. Mufarreh created the predetermined protocol for diagnosing and treating patients, regardless of individual medical need, and that Gover implements that protocol.  Id. ¶¶ 2, 46, 51.  Further, Plaintiff alleges that the Warren Defendants issue false disability certificates, which are then provided to Priority (via G. Mufarreh and Smith) so the Priority Defendants can submit claims to Plaintiff for medically unnecessary transportation services.  Id. ¶¶ 5, 52-61.

Finally, Plaintiff claims that this scheme has been in place since at least 2005, and has "continued uninterrupted since that time."  Id. ¶ 9.  Plaintiff suggests that all of the Defendants have participated in the scheme since at least 2010.  Id. ¶ 22.  And Plaintiff maintains that Defendants have submitted hundreds of fraudulent bills during that time period.  Id. ¶¶ 18, 84;

7

see also Exs. 1 and 2 to Compl. (Dkts. 1-2, 1-3).  Therefore, Plaintiff's Complaint sufficiently satisfies the Boyle factors for purposes of a motion to dismiss.

Quoting VanDenBroeck, 210 F.3d at 699, Defendants argue that "simply conspiring to commit a fraud is not enough to trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes."  Warren Defs. Br. at 15 (Dkt. 17).  In other words, Defendants claim that the enterprise must exist separate and apart from the pattern of racketeering activity.  Id. at 16-17.

To the extent Defendants raise this argument to claim that some minimal level of organizational structure is required, this is correct.  However, as described above, Plaintiff has sufficiently pled the level of structure required by the Supreme Court in Boyle.

To the extent Defendants are claiming that the enterprise element is separate and distinct from the pattern-of-racketeering requirement, this also is correct.  However, to the extent Defendants claim that the pattern of racketeering activity cannot be used to reveal the existence of an enterprise, or that the enterprise cannot exist for the purpose of accomplishing the racketeering activity, this position was rejected by the Supreme Court in Boyle.  In that case, the Supreme Court held that, although the existence of an enterprise is a separate element that must be proven, "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise may in particular cases coalesce."  Boyle, 556 U.S. at 947 (quotation marks and citation omitted).  Indeed, the Supreme Court upheld a jury instruction that (i) allowed the finding of an association-in-fact enterprise "form[ed] solely for the purpose of carrying out a pattern of racketeering acts," and (ii) instructed that "[c]ommon sense suggests that the existence of an association-in-fact [enterprise] is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure."  Id. at 942; see also Slorp v. Lerner, Sampson &

8

Rothfuss, 587 F. App'x 249, 265 (6th Cir. 2014) ("The association-in-fact enterprise must be separate and distinct from the pattern of racketeering activity in which it engages, but the enterprise could have been formed solely for the purpose of engaging in the racketeering activity."). The Supreme Court concluded that "proof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise." Boyle, 556 U.S. at 951.

Therefore, for purposes of a motion to dismiss, Plaintiff has sufficiently pled the requisite structural features of the enterprise: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Id. at 946. The Court thus joins the large number of federal courts that have rejected similar arguments that the plaintiff-insurer failed to sufficiently allege an enterprise under RICO in similar complaints. See State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc., No. 14-10266, 2014 WL 5427170, at *4 (E.D. Mich. Oct. 24, 2014); State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc., No. 12-11500, 2013 WL 509284, at *4-5 (E.D. Mich. Jan. 12, 2013); State Farm Mut. Auto. Ins. Co. v. Kugler, No. 11-80051, 2011 WL 4389915, at *5-6 (S.D. Fla. Sept. 21, 2011); Allstate Ins. Co. v. Palterovich, 653 F. Supp. 2d 1306, 1316 (S.D. Fla. 2009); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., No. 04-5045, 2008 WL 4146190, at *10 (E.D.N.Y. Sept. 5, 2008).

### b.    Conducted the Affairs of the Enterprise

Defendants next challenge whether Plaintiff has sufficiently described how each Defendant was involved in the operation or management of the enterprise. Warren Defs. Br. at 17-21; Priority Defs. Br. at 10-12 (Dkt. 20). Defendants argue that simply performing services for an enterprise, even if one knows of the enterprise's illicit nature, is insufficient. Warren

Defs. Br. at 18-20.   Plaintiff responds that the Complaint adequately sets forth how each Defendant had "some part in directing the enterprise's affairs," either by "making decisions on behalf of the enterprise or by knowingly carrying them out."  Pl. Resp. to Warren Defs. Mot. to Dismiss at 18-21 (Dkt. 24).

The Sixth Circuit recently set forth the standard for determining whether a plaintiff sufficiently alleges that a defendant conducted or participated in the conduct of the enterprise's affairs for purposes of RICO:

> A plaintiff must set forth allegations to establish that the defendant conducted or participated, "directly or indirectly, in the conduct of [the] enterprise's affairs."  18 U.S.C. § 1962(c).  In Reves v. Ernst & Young, the Supreme Court held that participation in the conduct of an enterprise's affairs requires proof that the defendant participated in the "operation or management" of the enterprise. 507 U.S. 170, 183 (1993).  RICO liability is not limited to those with primary responsibility for the enterprise's affairs; only "some part" in directing the enterprise's affairs is required.  Id. at 179. However, defendants must have "conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs."  Id. at 185 (emphasis in original).

Ouwinga, 694 F.3d at 791-792.  The Sixth Circuit also clarified that, "'[a]lthough Reves does not explain what it means to have some part in directing the enterprise's affairs, . . . it can be accomplished either by making decisions on behalf of the enterprise or by knowingly carrying them out.'"  Id. at 792 (quoting United States v. Fowler, 535 F.3d 408, 418 (6th Cir. 2008)) (emphasis removed).

Here, Plaintiff has sufficiently alleged how each of the Defendants made decisions on behalf of the enterprise, or knowingly carried out the decisions, such that they participated in the operation or management of the enterprise.  Plaintiff alleges that J. Mufarreh designed and implemented the fraudulent predetermined protocol; that Gover implemented and carried out the protocol; and that Warren — the entity owned by J. Mufarreh through which the fraudulent

claims were submitted — was the business at which the protocol was implemented. Compl. ¶¶ 2-3, 5, 18, 21, 32, 41, 51. Plaintiff further details the purported issues with the protocol, including treatments and diagnoses not specific to the patients, ordering tests and therapies regardless of patient need, and creating false disability certificates to support, among other things, medically unnecessary transportation to encourage continued treatment at Warren. Id.

With respect to the Priority Defendants, Plaintiff suggests that these Defendants knew the submitted transportation claims were fraudulent. Id. ¶ 58. Plaintiff further claims that Smith — a purported owner of Priority — signed an insurance application stating that the company would "transport able bodied passengers," but that Smith also has testified that they obtain disability certificates from doctors to make sure the insurance company will pay the claims. Id. ¶¶ 58-59. In addition, according to Plaintiff, George Mufarreh — a co-owner of Priority, and J. Mufarreh's brother — similarly testified that they use disability certificates to obtain payment from insurance companies. Id. In other words, Plaintiff claims the Priority Defendants falsely represented (via their submitted claims) that the transportation was medically necessary, when they knew it was not. Id. ¶¶ 85-86.

Plaintiff also asserts that the Priority Defendants' participation in the enterprise is important, because it ensures that patients continue treating at Warren — with its predetermined protocol — by providing a convenient method of getting to the facility. Id. ¶ 61. Plaintiff claims the actions by the Defendants — including the provision and use of false disability certificates — were undertaken as part of a large scheme to defraud Plaintiff of insurance payments. Id. ¶ 91.

Accepting all of Plaintiff's allegations as true, the Court finds that Plaintiff sufficiently explains how each Defendant made or carried out decisions on behalf of the enterprise, and, thus, how each Defendant had some part in conducting and/or participating in the enterprise's affairs.

Plaintiff has, therefore, satisfied this requirement of the RICO inquiry.  See Universal Health Grp., Inc., 2014 WL 5427170, at *5; Kugler, 2011 WL 4389915, at *6 (collecting cases).

     **c.**      **Rule 9(b)**

Defendants claim that Plaintiff has not satisfied Federal Rule of Civil Procedure 9(b) with respect to the predicate acts, i.e., the purported mail fraud.  Warren Defs. Br. at 21-25. Defendants argue that Plaintiff's reliance on the attached exhibits to support its claim of mail fraud cannot suffice, because the exhibits fail to provide specificity regarding the purported fraud; instead, those exhibits simply identify categories, such as claim number, dates of service, and diagnoses.  Id. at 24.  Defendants claim that Plaintiff does not specifically allege "which of the Defendants caused what fraudulent statements to be mailed, together with when and how each mailing furthered the scheme."  Id.  Plaintiff responds that it set forth a detailed description of the purported scheme in the Complaint, as well as in the attached exhibits showing the alleged claims at issue.  Pl. Resp. to Warren Defs. Mot. to Dismiss at 21-25.  The Court agrees that Plaintiff's allegations are sufficient.

Plaintiff alleges that the predicate racketeering acts in this case are acts of mail fraud, i.e., the mailed fraudulent claims.  To establish a violation of the federal mail fraud statute, 18 U.S.C. § 1341, Plaintiff must show that Defendants: (i) "formed a scheme or artifice to defraud"; (ii) "used the United States mails . . . or caused a use of the United States mails . . . in furtherance of the scheme"; and (iii) "did so with the specific intent to deceive or defraud."  800537 Ontario Inc. v. Auto Enters., Inc., No. 99-75615, 2005 WL 3021968, at *1 (E.D. Mich. Nov. 10, 2005).

In pleading mail fraud, Plaintiff must satisfy Federal Rule of Civil Procedure 9(b), which requires Plaintiff to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened

pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Heinrich v. Waiting Angels Adoption Servs., Inc., 668 F.3d 393, 404 (6th Cir. 2012) (quoting Frank v. Dana Corp., 547 F.3d 564, 570 (6th Cir. 2008)).

Here, over the course of a 48-page, 108-paragraph Complaint, Plaintiff details a purported scheme by Defendants to defraud Plaintiff. This includes allegations that Defendants: charged for services that were not provided; issued standard diagnoses for patients; ordered medical tests and treatments even when unnecessary; created a standardized protocol and treatment timeline for patients, regardless of individual patient need; and completed and used false disability certificates to obtain reimbursement for unnecessary transportation to Warren to ensure patients continued treating there. Furthermore, Plaintiff has attached to its Complaint two spreadsheets (one regarding the Warren Defendants' claims and one regarding the Priority Defendants' claims), which detail the purportedly fraudulent mailings by Defendants. These exhibits reflect the claim number, dates of service, length of service, and dates of mailing, among other items. Plaintiff also submits various examples of purportedly fraudulent claims and documentation.

Numerous courts have concluded that such documentation and explanation of the fraudulent scheme satisfies Rule 9(b), because it sufficiently puts the defendants on notice of the claims against which they will have to defend. See, e.g., Universal Health Grp., Inc., 2014 WL 5427170, at *3 (in analyzing same argument based on similar complaint and exhibits, finding that "[e]ach defendant has received sufficient notice of the misrepresentations it is alleged to have made"); Kugler, 2011 WL 4389915, at *4 (chart attached to complaint sufficient); Allstate

13

Ins. Co. v. Lyons, 843 F. Supp. 2d. 358, 373-373 (E.D.N.Y. 2012) (rejecting defendants'

argument regarding Rule 9(b), because the plaintiff "explain[ed] in detail the contours of the

fraudulent scheme," and "[t]he [attached] charts detail the entity that submitted each claim, as

well as the corresponding claim number, the year Allstate paid the claim, and the amount paid by

Allstate.  Such information clearly directs defendants to the specific misrepresentations Allstate

is alleging."); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., No. 04-5045, 2008 WL

4146190, at *12 (E.D.N.Y. Sept. 5, 2008) ("Indeed, State Farm went beyond the necessary

pleading requirements for RICO in providing [similar] charts, as the allegations of a scheme to

defraud and details of that scheme would have sufficed."); Sky Med. Supply Inc. v. SCS Support

Claims Servs., Inc., 17 F. Supp. 3d 207, 228-229 (E.D.N.Y. 2014); Gov't Employees Ins. Co. v.

Hollis Med. Care, P.C., No. 10-4341, 2011 WL 5507426, at *8 (E.D.N.Y. Nov. 9, 2011)

(collecting cases).   Indeed, as Judge O'Meara explained in State Farm Mutual Automobile

Insurance Co. v. Physiomatrix, Inc., where he rejected a similar argument,

> [I]n complex civil RICO actions involving multiple defendants,
> Rule 9(b) does not . . . require that the temporal or geographic
> particulars of each mailing made in furtherance of the fraudulent
> scheme be stated with particularity, but only that the plaintiff
> delineate, with adequate particularity in the body of the complaint,
> the specific circumstances constituting the overall fraudulent
> scheme.

No. 12-11500, 2013 WL 509284, at *5 (E.D. Mich. Jan. 12, 2013) (quotation marks and citation

omitted).  The Court finds the reasoning of these cases persuasive.

The Court is not persuaded by Defendants' argument that Plaintiff fails to specify which

particular Defendant mailed which particular claim.  Warren Defs. Br. at 24.  The Sixth Circuit

has explained that a defendant may be liable for mail fraud, even if the defendant did not commit

the mailing himself or herself, if the defendant is a "willful participant[] in a scheme to defraud[,]

14

and that the use of the mails . . . by the other participants were foreseeable and in furtherance of the scheme." United States v. Kennedy, 714 F.3d 951, 959 (6th Cir. 2013); see also United States v. Bullock, 243 F. App'x 107, 111 (6th Cir. 2007) ("[T]he government does not have to show that the defendant actually used the mails but must show that the defendant acted with knowledge that use of the mails would follow in the ordinary course of business, or that a reasonable person would have foreseen use of the mails." (quotation marks and citation omitted)).  Plaintiff sufficiently alleges how the individual Defendants helped create, implement, and further the fraudulent billing scheme that foreseeably resulted in the purportedly fraudulent mailings at issue here.

Therefore, the Court finds that Plaintiff has sufficiently satisfied Rule 9(b) for purposes of a motion to dismiss.

### d.      Continuity

Defendants next challenge the continuity requirement for RICO.  Warren Defs. Br. at 25-26.  Defendants claim that the Complaint does not sufficiently allege that the purported predicate acts amount to or constitute a threat of continuing racketeering activity; rather, according to Defendants, Plaintiff has alleged, at most, a single, fraudulent scheme to accomplish a single objective.  Id.  The Court rejects this argument.

To establish a RICO violation, the plaintiff must show a "pattern of racketeering activity."  18 U.S.C. § 1962(c).  The Supreme Court has interpreted this as requiring that the "racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 237-239 (1989) (emphasis in original).  This is commonly referred to as the "relationship plus continuity test."  See Heinrich, 668 F.3d at 409.  Defendants challenge the continuity prong.

15

"The continuity prong of the test can be satisfied by showing either a 'close-ended' pattern (a series of related predicate acts extending over a substantial period of time) or an 'open-ended' pattern (a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed)." Id. at 409-410.

Here, Plaintiff alleges that the fraudulent scheme was in place from at least 2005 to the filing of the Complaint, a period of nine years. Compl. ¶¶ 9, 18. The same goes for Gover since 2009. Id. ¶ 46. Similarly, Plaintiff alleges the Priority Defendants have submitted fraudulent bills since 2010, a period of four years. Id. ¶ 22. Furthermore, Plaintiff claims that Defendants' conduct is ongoing — i.e., that they continue to submit fraudulent bills for payments — and that this is Defendants' normal way of doing business. Id. ¶¶ 9, 59. The Court thus concludes that Plaintiff has sufficiently alleged facts supporting the continuity requirement.

The Court is not persuaded by Defendants' argument that Plaintiff's allegations amount to, at most, a single fraudulent scheme to defraud a single company, which Defendants suggest cannot support a RICO claim. This argument is based on statements taken out of context. The Sixth Circuit has explained that the "requirement of 'continuity,' or a threat of continuing criminal activity, ensures that RICO is limited to addressing Congress's primary concern in enacting the statute, i.e., long-term criminal conduct." Vemco, Inc. v. Camardella, 23 F.3d 129, 133-134 (6th Cir. 1994). Contrary to Defendants' arguments, however, "[t]he existence of only one scheme to defraud does not automatically preclude the finding of a pattern." Id. at 134.

Rather, Defendants' argument regarding a single, fraudulent scheme as precluding a RICO claim typically applies in cases involving an "inherently terminable scheme — a pattern of racketeering activity with a built-in ending point." Heinrich, 668 F.3d at 410. For this reason, Defendants' reliance on Percival v. Girard, 692 F. Supp. 2d 712, 722-723, 730 (E.D. Mich.

16

2010), is misplaced.  In that case, the purported scheme involved an alleged attempt to deny the plaintiff his rights under a settlement agreement.  As Judy Levy recently explained, this constituted a "single, discrete scheme with a single goal that was not repeated and bore no threat of repetition once the goal was accomplished."  <u>Universal Health Grp., Inc.</u>, 2014 WL 5427170, at *6.

Here, on the other hand, Defendants' purportedly fraudulent conduct continues each time they submit a new bill under the predetermined protocol.  In other words, there is no built-in ending point in this case; the conduct could continue indefinitely with each new patient or treatment.  <u>See, e.g.</u>, <u>Thompson v. Paasche</u>, 950 F.2d 306, 311 (6th Cir. 1991) (finding no continuity, because the fraudulent scheme was an "inherently short-term affair" that would end once the 19 lots of land were sold); <u>Moon v. Harrison Piping Supply</u>, 465 F.3d 719, 725-726 (6th Cir. 2006) (finding no continuity where "[a]ll of the predicate acts . . . were keyed to Defendants' single objective of depriving [the plaintiff] of his [workers' compensation] benefits. . . . [T]here are no facts suggesting that the scheme would continue beyond the Defendants accomplishing their goal of terminating [the plaintiff's] benefits.").

Accordingly, the Court rejects Defendants' argument based on the continuity requirement.

### e.    RICO Conspiracy

Defendants next claim that Plaintiff has failed to sufficiently allege a RICO conspiracy. Defendants reiterate their argument that the Complaint fails to explain how each and every Defendant "agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity."  Warren Defs. Br. at 29-30.

Defendants also claim that Plaintiff has not alleged that each Defendant "further agreed that someone would commit at least two predicate acts to accomplish those goals." Id.

Pursuant to 18 U.S.C. § 1962(d), a defendant may be liable for RICO conspiracy if he or she "conspire[s] to violate any of the provisions of subsection (a), (b), or (c) of this section," i.e., the substantive RICO offenses. "Unlike the general conspiracy statute, § 1962(d) requires no 'overt act or specific act' in carrying it forward." United States v. Corrado, 227 F.3d 543, 553-554 (6th Cir. 2000) (citing Salinas v. United States, 522 U.S. 52, 63 (1997)). "[S]upporters are as guilty as . . . perpetrators . . . . [S]o long as they share a common purpose, conspirators are liable for the acts of their co-conspirators." Salinas, 522 U.S. at 64. "A RICO conspirator 'may be convicted so long as he agrees with such other person or persons that they or one or more of them will engage in conduct that constitutes such crime.'" Corrado, 227 F.3d at 554 (quoting Salinas, 522 U.S. at 65) (emphasis removed).

"The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." Salinas, 522 U.S. at 63-66. The defendant need not have agreed to commit the two predicate acts himself or herself, so long as he or she agreed that someone would commit the acts. Id. Indeed, "[a] person . . . may be liable for conspiracy even though he was incapable of committing the substantive offense." Id. at 64.

The Court has carefully reviewed the Complaint, and concludes that Plaintiff has adequately pled a RICO-conspiracy claim. As described earlier, Plaintiff sufficiently describes the alleged fraudulent billing enterprise and how each Defendant is connected to it, including controlling or participating in the purported scheme. Similarly, as Plaintiff highlights, the Complaint outlines how the Defendants agreed to work with and needed each other to carry out

and achieve the common purpose of their fraud scheme, including describing the purported predicate mailings and why the claims were fraudulent, i.e., the predetermined protocol and the issuance of false disability certificates for transportation. See, e.g., Compl. ¶¶ 42-78, 97-99; see also ¶ 56 (describing how Smith and G. Mufarreh purportedly "started Priority Transport by consulting John Mufarreh"). Therefore, the Court joins other courts that have found similar allegations sufficient to support a RICO-conspiracy claim for purposes of a motion to dismiss. See, e.g., Universal Health Grp., Inc., 2014 WL 5427170, at *8-9 (rejecting same arguments).

### ii. Injury Requirement

The Priority Defendants argue that, under the Sixth Circuit's decision in Jackson v. Sedgwick Claims Management Services, Inc., 731 F.3d 556 (6th Cir. 2013), Plaintiff cannot recover under RICO because the alleged damages at issue arise from the patients' personal injuries. Priority Defs. Br. at 9-10 (Dkt. 20). Plaintiff responds that its injury is a harm to its business and property. Pl. Resp. to Priority Defs. Mot. to Dismiss at 19-20 (Dkt. 25). Plaintiff also highlights that the Jackson decision is distinguishable, because that case concerned employees attempting to recover amounts due for workers' compensation benefits, which compensate for personal injuries. Here, on the other hand, Plaintiff is not seeking compensation for any personal injuries, but rather for purportedly fraudulent claims that it paid for unnecessary or unperformed services. Id. at 21.

RICO allows a "person injured in his business or property by reason of a violation of section 1962 . . . [to] sue . . . in any appropriate United States district court." 18 U.S.C. § 1964(c). Given the "business or property" limitation, RICO does not apply to claims for personal injuries.

In <u>Jackson</u>, the plaintiffs-employees sued their former-employer's third-party claims administrator under RICO, alleging that the administrator had engaged in a fraudulent scheme to avoid paying workers' compensation benefits. <u>Jackson</u>, 731 F.3d at 558. The Sixth Circuit held that the plaintiffs' claim of an alleged refusal to pay benefits was a claim for damages from personal injury, and thus not covered by RICO:

> But the losses they allege are simply a shortcoming in the compensation they believed they were entitled to receive for a personal injury. They are not different from the losses the plaintiffs would experience if they had to bring a civil action to redress their personal injuries and did not obtain the compensation from that action they expected to receive. Michigan's decision to create a workers' compensation system does not transform a disappointing outcome in personal injury litigation into damages that can support a RICO civil action, even if Michigan law characterizes the benefits awarded under this system as a legal entitlement. Accordingly, racketeering activity leading to a loss or diminution of benefits the plaintiff expects to receive under a workers' compensation scheme does not constitute an injury to "business or property" under RICO.

<u>Id.</u> at 566. The Priority Defendants rely on this language, arguing that "State Farm is claiming damages as a result of the Defendants [sic] treatment of patients under Michigan's No-Fault Insurance Act. Each patient who was treated by the Defendant health care professionals was injured in an automobile accident. Any such injury is necessarily a 'personal injury' and not damage to any 'business or property.'" Priority Defs. Br. at 10.

This case differs significantly from <u>Jackson</u>, however, because it is not the insured seeking to recover from the insurance company for his or her injuries, but rather the insurance company seeking to recover from the medical providers for purportedly fraudulent claims. The Supreme Court has explained that "[w]hen a commercial enterprise suffers a loss of money[,] it suffers an injury in both its 'business' and its 'property,'" particularly when the commercial enterprise's "property is diminished by a payment of money wrongfully induced." <u>Reiter v.</u>

Sonotone Corp., 442 U.S. 330, 339-340 (1979).  Accordingly, when Plaintiff paid this money to Defendants, it suffered an injury to its "business or property."  This business dispute between an insurance company and the medical providers thus relates to harm to business or property, not personal injury.

Indeed, courts in this District already have rejected Defendants' interpretation of Jackson based on the same type of conduct as alleged in this case.  In Physiomatrix, Judge O'Meara concluded that the insurer's "injuries arise from the payment of allegedly fraudulent claims submitted by the [defendant medical providers].  Such an injury is clearly not 'personal' and is an injury to [the insurer's] 'business or property.'"   State Farm Mut. Auto. Ins. Co. v. Physiomatrix, No. 12-11500, 2014 WL 555199, at *2 (E.D. Mich. Feb. 12, 2014).  Furthermore, in rejecting the insurer's argument that the medical providers' counter-claim for unpaid benefits should be dismissed as arising out of the personal injuries of the patients, Judge O'Meara concluded that the "nature of the [medical providers'] injury is different from the nature of the insureds' injuries.  The [providers] have provided services for which they are not being paid; this is more properly characterized as a 'business' rather than a 'personal' injury."  Id.

Next, Judge Leitman reached the same conclusion in Allstate Insurance Co. v. Medical Evaluations, P.C., No. 13-14682, 2014 WL 2559230, at *1-2 (E.D. Mich. June 6, 2014).  Judge Leitman explained that, (i) as a corporation, the insurer cannot suffer a personal injury; (ii) injuries for payments from fraudulent bills have consistently been recognized as cognizable under RICO; and (iii) the defendants had not cited any particular aspect of the Michigan no-fault system they believed would be displaced if the RICO claim was allowed to proceed — a concern that motivated the Jackson court, at least in part.  Id.

Finally, Judge Levy followed these courts' leads in <u>State Farm Mutual Automobile Insurance Co. v. Universal Health Group, Inc.</u>, No. 14-10266, 2014 WL 5427170, at *8 (E.D. Mich. Oct. 24, 2014). Judge Levy explained that, "[i]f any claim merely <u>derivative</u> of a personal injury barred RICO liability, then not only would insurance companies be barred from seeking RICO recovery, but doctors, hospitals, and any number of nonprofits directly injured in their business dealings involving personal injuries would as well. This is not how the Court interprets the holding in <u>Jackson</u>." <u>Id.</u> (emphasis in original).

The Court finds the reasoning of these decisions persuasive. Accordingly, the Court rejects the Priority Defendants' argument that, under <u>Jackson</u>, Plaintiff's alleged harm constitutes "personal" — rather than business or property — injury.

### iii. Reverse Preemption

The Priority Defendants next argue that Plaintiff's RICO claims are "reverse preempt[ed]" by the McCarran-Ferguson Act, 15 U.S.C. §§ 1011, <u>et</u> <u>seq</u>. Priority Defs. Br. at 6-9. That Act provides that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). In addition, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, . . . unless such Act specifically relates to the business of insurance." <u>Id.</u> § 1012(b).

The Priority Defendants claim that the Michigan Insurance Code provides a mechanism for handling purportedly fraudulent claims, and that a RICO claim premised on this same conduct would thus impair the Code by providing recourse outside that contemplated by the Michigan legislature. Priority Defs. Br. at 9. Plaintiff responds that federal courts have

consistently found that the McCarran-Ferguson Act does not reverse preempt RICO claims premised on a scheme to defraud insurance companies through false claims.  Pl. Resp. to Priority Defs. Mot. to Dismiss at 9-14 (Dkt. 25).  The Court agrees.

The Sixth Circuit has set forth a three-part test for determining whether a federal statute is subject to reverse preemption under the Act.  First, the district court must determine whether the federal statute at issue — RICO in this case — "specifically relates to the business of insurance."  Genord v. Blue Cross & Blue Shield of Mich., 440 F.3d 802, 805 (6th Cir. 2006).  "If it does, then the McCarran-Ferguson Act, by its own terms, does not permit reverse preemption."  See Riverview Health Inst. LLC v. Med. Mut. of Ohio, 601 F.3d 505, 514 (6th Cir. 2010).

If the federal statute does not specifically relate to the business of insurance, then the district court must consider two questions: (i) "'whether the state statute at issue was enacted . . . for the purpose of regulating the business of insurance,'" and (ii) "'whether the application of the federal statute would invalidate, impair, or supersede the state statute.'"  Id. (quoting Genord, 440 F.3d at 805-806).  The Court must answer both questions in the affirmative for reverse preemption to apply.  Id.

Here, Plaintiff appears to concede that RICO does not specifically relate to the business of insurance.  See id.  Nevertheless, in examining the next two questions, numerous federal courts — including courts in this District — have concluded that the application of RICO to a defendant's purportedly fraudulent billing scheme would not "invalidate, impair, or supersede the state statute."  See, e.g., Universal Health Grp., Inc., 2014 WL 5427170, at *8 ("The Court need not address the first two parts of the argument, as the application of RICO would not impair, invalidate or supersede Michigan's Insurance Code."); State Farm Mut. Auto. Ins. Co. v.

Physiomatrix, Inc., No. 12-11500, 2013 WL 509284, at *3-4 (E.D. Mich. Jan. 12, 2013) ("The court finds that RICO complements and augments, rather than impairs, Michigan's regulatory scheme."); see also State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212, 224-225 (E.D.N.Y. 2009) ("Here, State Farm's RICO claims supplement, rather than disturb, New York's insurance regime by providing another vehicle by which to carry forth the substantive policies of the State of New York." (quotation marks and citations omitted)); Weiss v. First Unum Life Ins. Co., 482 F.3d 254, 267 (3d Cir. 2007) ("[I]t is logical to assume, as the Supreme Court did in Humana, that deeming federal civil RICO suits to be unavailable because they would impair the state scheme would deprive insurers of an important weapon of self-defense."). Cf. Riverview Health Inst. LLC, 601 F.3d at 519 ("[I]nsurers still have a cause of action under . . . federal RICO for fraud perpetrated against them by insureds.").

The Priority Defendants have cited no authority to the contrary, and the Court finds the reasoning of the foregoing decisions persuasive. The Court, therefore, concludes that Plaintiff's RICO claim based on purportedly fraudulent billing practices does not "invalidate, impair, or supersede" Michigan's insurance laws. Accordingly, the Court rejects the Priority Defendants' argument for reverse preemption.[2]

## B.  Colorado River Abstention and Collateral Estoppel

Defendants next argue that this Court should abstain from presiding over this action pursuant to the Supreme Court's decision in Colorado River Water Conservation District v.

---

[2]  Because the Court concludes that Plaintiff's RICO claims are proper, it rejects Defendants' argument that the Court should not exercise supplemental jurisdiction over Plaintiff's state-law claims. See Warren Defs. Br. at 44. Furthermore, even if the Court were to dismiss Plaintiff's RICO claims, Plaintiff has alternatively alleged that diversity jurisdiction exists over the state-law claims, pursuant to 28 U.S.C. § 1332. Pl. Resp. to Warren Defs. Mot. to Dismiss at 37, n.14; see also Compl. ¶¶ 13, 17-24, 50 (setting forth the basis for diversity jurisdiction). Defendants fail to respond to this argument and/or dispute that diversity jurisdiction would be proper.

United States, 424 U.S. 800 (1976), which permits federal courts to decline to exercise jurisdiction over certain actions in light of parallel state court cases. Warren Defs. Br. at 30-32. Framing this dispute as nothing more than a combination of many independent state court no-fault actions, Defendants argue that there are "scores" of similar ongoing cases in state court where Plaintiff has refused to pay the medical provider due to allegedly unnecessary or unreasonable charges. Id. Furthermore, using this same logic, Defendants argue that Plaintiff is collaterally estopped from challenging the reasonableness/necessity of many of the underlying claims in this action, given judgments and settlements entered on these claims in state court. Id. at 35-39.

With respect to both Colorado River abstention and collateral estoppel, Plaintiff responds that Defendants have not identified the applicable state court cases with sufficient particularity. Pl. Resp. to Warren Defs. Mot to Dismiss at 36, 38-39. The Court agrees.

The Colorado River doctrine allows a federal court to abstain from exercising jurisdiction over a matter "in deference to a parallel state-court proceeding if abstention will best promote the values of efficient dispute resolution and judicial economy." Gentry v. Wayne Cnty., No. 10-11714, 2010 WL 4822749, at *2 (E.D. Mich. Nov. 22, 2010). The Supreme Court has recognized, however, that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," Colorado River, 424 U.S. at 817, and that, "[i]f there is any substantial doubt" that parallel state court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, "it would be a serious abuse of discretion to grant the stay or dismissal at all," Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 28 (1983). Accordingly, a court should abstain only in "extraordinary and narrow" circumstances. Colorado River, 424 U.S. at 813.

A two-part test is used in determining whether abstention is proper under Colorado River. First, the district court must find that the concurrent state and federal actions are parallel. Romine v. Compuserve Corp., 160 F.3d 337, 339-340 (6th Cir. 1998).  If the actions are parallel, the district court must consider a number of factors in determining whether abstention is warranted.  Id. at 340-341.  As the parties contesting jurisdiction, it is Defendants' burden to prove that abstention is proper.  See Answers in Genesis of Ky., Inc. v. Creation Ministries, Int'l, Ltd., 556 F.3d 459, 467 (6th Cir. 2009).

Here, the Court's analysis ends with the first step; Defendants fail to identify a single case with particularity that they believe is parallel to this action.  Instead, Defendants boldly claim that the applicable "state-court cases are too numerous to cite here, and new actions are frequently filed."  Warren Defs. Br. at 31, n.6.  This is insufficient, however, for the Court to perform the fact-intensive inquiry required for a proper Colorado River analysis.  For example, to show parallelism, Defendants must demonstrate that "(1) the parties are substantially similar and (2) [Plaintiff's] claims against [Defendants] are predicated on the same allegations as to the same material facts."  Doe v. Ann Arbor Pub. Schools, No. 11-15657, 2012 WL 1110015, at *3 (E.D. Mich. Apr. 3, 2012).  Defendants' generic reference to "scores" of other cases, without citation or explanation, is not enough to show that these purported matters satisfy these requirements.

Indeed, to the extent these other matters have concluded — a question the Court cannot decide based on the woefully deficient record and briefing before it — they cannot serve as the basis for Colorado River abstention.  See Chellman-Shelton v. Glenn, 197 F. App'x 392, 394-395 (6th Cir. 2006) (finding that the district court erred in abstaining, because, "[w]hen the district court abstained, the related state court action between these parties had already

26

concluded, so there was no pending state court proceeding to which the district court could defer"); Gottfried v. Med. Planning Servs., Inc., 142 F.3d 326, 329 (6th Cir. 1998) ("[W]here . . . there is no presently ongoing state proceeding parallel to the federal case, the exceptional circumstances necessary for Colorado River abstention do not exist.").

Accordingly, Defendants have failed to meet their burden of showing that Colorado River abstention is proper at this time.

Defendants' argument based on collateral estoppel fails for the same reason.  Defendants argue that Plaintiff is collaterally estopped from arguing about the reasonableness and/or medical necessity of the claims that it paid, because Defendants "believe[] that a number of other Insureds have likewise successfully litigated issues of reasonableness and medical necessity to judgment in state (or federal) courts."  Warren Defs. Br. at 36.

Once again, this broad pronouncement, without any specific citations or evidence, is insufficient.  Without further identification of the underlying judgments, the Court cannot perform a proper collateral estoppel analysis, e.g., determining the actual issue(s) decided in those cases, the manner in which they were decided (orally or written), whether a judgment was entered, the parties to the matter, etc.  See State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc., No. 14-10266, 2014 WL 5427170, at *11 (E.D. Mich. Oct. 24, 2014) (rejecting same collateral estoppel argument, because defendants "identify no prior cases and no prior issues to serve as the basis for the exercise of collateral estoppel").

Nor is the Court persuaded by Defendants' claim that the cases are "too numerous to cite here," or that it should be Plaintiff's burden to identify these cases.  See Warren Defs. Br. at 31, n.6.  As the parties raising abstention and collateral estoppel, it is Defendants' burden to identify the comparable cases with particularity.  Further, these cases are a matter of public record and, to

the extent Defendants claim to have been parties to at least some of them, well within Defendants' personal knowledge.  See id. at 31 ("All of the parties to this lawsuit are already litigants on the same issues in the various state court cases.").  Defendants cannot simply assert these arguments, and then leave it for Plaintiff and the Court to sort out and determine how or why unspecified state court actions may or may not apply.  See McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation marks and citations omitted)).

Therefore, the Court rejects Defendants' arguments based on Colorado River abstention and collateral estoppel.

## C. **Burford** Abstention

Defendants next assert that the Court should abstain from hearing this case under Burford v. Sun Oil Co., 319 U.S. 315 (1943).  "Burford abstention is used to avoid conflict with a state's administration of its own affairs."  Rouse v. DaimlerChrysler Corp., 300 F.3d 711, 716 (6th Cir. 2002).  Under this doctrine, a federal court can abstain from hearing a case if the court's "decision on a state law issue is likely to 'interfere with the proceedings or orders of state administrative agencies.'"  Id. (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350 (1989)).  As with abstention under Colorado River, the "balance only rarely favors abstention, and the power to dismiss recognized in Burford represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it."  Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728 (1996) (quotation marks and citation omitted).  Indeed, the Supreme Court has held that the doctrine only applies if (1) a case "presents 'difficult questions of state law bearing on policy problems of substantial public import

28

whose importance transcends the result in the case then at bar;'" or (2) the exercise of federal review of the question in a case and in similar cases would "'be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" Id. (quoting New Orleans Pub. Serv., Inc., 491 U.S. at 361).

Defendants claim that Michigan's no-fault insurance scheme is a "unique" regime, and that intervention by this Court risks both thwarting the state's attempt to manage its own affairs and inconsistent decisions on how the scheme applies.  Warren Defs. Br. at 33-35.  Defendants reiterate their suggestion that this action is nothing more than Plaintiff's attempt to consolidate numerous unidentified state court actions that purportedly challenge Plaintiff's refusal to pay benefits.  Id.

Plaintiff responds that Burford abstention does not apply, because Defendants have not identified any administrative proceedings or orders that are at issue in this federal lawsuit.  Pl. Resp. to Warren Defs. Mot to Dismiss at 42.  Plaintiff also argues that Defendants have offered no real basis for concluding that the exercise of jurisdiction over this case would interfere with Michigan's no-fault regime.  Id at 42-43.  To the contrary, Plaintiff highlights that numerous federal courts have addressed similar issues regarding an insurer's right to bring RICO claims for purportedly fraudulent billing practices, without interfering with state efforts to develop policies regarding no-fault insurance.  Id. at 43.

The Court concludes that Burford abstention is inappropriate, because Defendants' arguments in support of abstention are conclusory and unsupported.  Defendants claim that abstention is proper under Burford because Michigan's no-fault insurance scheme is a "particularly unique state-law regime."  Therefore, Defendants argue that this Court should leave

resolution of <u>any</u> issues regarding that scheme to Michigan state courts.  Warren Defs. Br. at 33-34.

However, federal courts regularly decide issues concerning Michigan's no-fault scheme without raising the conflict issues <u>Burford</u> abstention is intended to address.  Indeed, Defendants have not provided any real basis for concluding that a decision in this case presents "difficult questions of state law bearing on policy problems of substantial public import," or would be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." <u>Quackenbush</u>, 517 U.S. at 726-727 (quotation marks and citation omitted).

Furthermore, despite Defendants' protestations to the contrary, this case challenges purportedly fraudulent conduct by Defendants under a federal statute: RICO.  Plaintiff does not challenge the no-fault scheme itself, or any state decision — administrative or otherwise — based on those statutory provisions.  Instead, Plaintiff claims that Defendants acted fraudulently — conduct the no-fault scheme also seeks to prevent.

Therefore, the Court concludes that Defendants have not sufficiently shown that <u>Burford</u> abstention should apply.  See <u>Universal Health Grp., Inc.</u>, 2014 WL 5427170, at *10 (rejecting claim of <u>Burford</u> abstention that was based on same argument that Michigan's no-fault law is "unique"); <u>Elite Med. Supply of N.Y., LLC v. State Farm Mut. Ins. Co.</u>, No. 13-918, 2014 WL 823439, at *4 (W.D.N.Y. Mar. 3, 2014) (<u>Burford</u> abstention inappropriate in case challenging non-payment of no-fault benefits); <u>Gov't Employees Ins. Co. v. Uptown Health Care Mgmt., Inc.</u>, 945 F. Supp. 2d 284, 290-291 (E.D.N.Y. 2013) (collecting cases, and concluding that <u>Burford</u> abstention did not apply because the plaintiffs "challenge[d] [the defendant's] fraudulent conduct, rather than New York's regulatory scheme).

**D.  Waiver**

Defendants also argue that Plaintiff waived its right to challenge the claims, because Plaintiff already paid Defendants.  Warren Defs. Br. at 39-40.  In essence, Defendants claim that by failing to investigate initially, and instead just making the payments, Plaintiff waived its right to bring this action.  Id.

Judge Levy addressed and rejected this same argument in State Farm Mutual Automobile Insurance Co. v. Universal Health Group, Inc.:

> Defendants argue that plaintiff has voluntarily waived the right to contest the propriety of claims previously paid.  Because Michigan's Insurance Code requires the submission of "reasonable proof" to the insurer before benefits may be paid, M.C.L. § 500.3142(2), defendants argue that the payment of any benefits constitutes a waiver as to all claims arising from the payment, even if the payment was fraudulently gained.
>
> Defendants cite no authority for the proposition that a reimbursement under Michigan's no-fault insurance system constitutes a waiver of claims related to the payment.
>
> Michigan law codifies a number of fraudulent insurance acts as felonies punishable by up to ten years in prison.  M.C.L. §§ 500.4503, 500.4511.  There is no reasonable interpretation of Michigan law that punishes, for instance, the submission of "false information concerning any fact or thing material to [an insurance] claim," M.C.L. § 500.4503(c), but only if the claim is unpaid.  In effect, defendants' interpretation of the law would only punish those who were incompetent fraudsters, letting their more intelligent or devious colleagues off the hook.
>
> The Court will not dismiss this case on the basis of voluntary waiver.

No. 14-10266, 2014 WL 5427170, at *11 (E.D. Mich. Oct. 24, 2014).  The Court agrees with this reasoning and adopts it as its own.  Accordingly, the Court rejects Defendants' waiver argument.

**E.  Unjust Enrichment**

Defendants next argue that Plaintiff's claim for unjust enrichment is subject to dismissal, because all of the payments at issue are subject to or governed by express insurance agreements

between Plaintiff and the insured patients.  Warren Defs. Br. at 41-42.  Defendants also claim

that, even if no such express contracts existed, Plaintiff has not sufficiently pled what actual

benefits Defendants unjustly received.  Id.  Plaintiff responds that claims for unjust enrichment

are only barred if there are express contracts between the same parties covering the same subject

matter.  Pl. Resp. to Warren Defs. Mot. to Dismiss at 30-32.  Here, Plaintiff argues, the policies

at issue do not involve the Defendants, and do not cover concerted actions to commit fraud.

Further, Plaintiff maintains that Defendants "have been unjustly enriched by fraudulently

inducing State Farm to pay Defendants more than $800,000 — a financial benefit to which the

Defendants were not entitled."  Id.

As has been explained by at least two other courts in this District considering similar

arguments by medical providers, "unless it is undisputed that there is an express contract

between the same parties covering the same subject matter, State Farm is entitled to plead unjust

enrichment as an alternative claim of relief."  Physiomatrix, 2013 WL 509284, at *5; Universal

Health Grp., Inc., 2014 WL 5427170, at *11.  In this case, Plaintiff disputes the existence of an

express contract between it and Defendants.  In addition, Plaintiff disputes that any such contract

would cover the purportedly fraudulent billing practices at issue in this litigation.  Pl. Resp. to

Warren Defs. Mot. to Dismiss at 30-32.  Therefore, the Court declines to dismiss Plaintiff's

claim for unjust enrichment.

Furthermore, Plaintiff has sufficiently set forth the benefit Defendants purportedly

unjustly received.  Plaintiff alleges that Defendants "have been enriched by more than $800,000"

for claims for medically unnecessary — and in some instances, never performed — services.

Plaintiff further maintains that "[b]ecause the [D]efendants knowingly submitted, and caused to

be submitted, bills and related documentation for examinations, diagnoses, treatments, and

transportation services that were fraudulent, the circumstances are such that it would be inequitable to allow them to retain the benefit of the monies paid."  Compl. ¶¶ 102-104.  This is sufficient for purposes of surviving a motion to dismiss.

## F.  Statutes of Limitations

Defendants next assert that Plaintiff's claims are barred, at least in part, by the applicable statutes of limitations.  Warren Defs. Br. at 27-28, 43.  Defendants argue that the clock for the statute of limitations began to run when Plaintiff knew or should have known of its injury.  Id. at 27.  Defendants highlight that, under Michigan law, Plaintiff had a statutory 30-day period to investigate the claims before having to make the payment.  Id. at 27-28.

Plaintiff responds that the statute of limitations is an affirmative defense for which Defendants carry the burden of proof, and which is not usually amenable to resolution on a motion to dismiss.  Pl. Resp. to Warren Defs. Mot. to Dismiss at 33-35.  As to the merits of Defendants' argument, Plaintiff argues that: (i) it has alleged that, due to the nature of the fraud, it did not and could not have discovered its injury until shortly before the filing of the Complaint; (ii) the mere ability to investigate is insufficient to start the clock; rather, the injured party must have received "storm warnings"; and (iii) insurers must be able to rely on the truthfulness of medical providers' representations in submitted claims for the no-fault insurance system to work.  Id. at 34-35.

The Court agrees with Plaintiff that it cannot resolve the statute-of-limitations issue based on the Complaint and Defendants' motions to dismiss.  The Sixth Circuit has emphasized that, because the statute of limitations is an affirmative defense, a motion under Rule 12(b)(6) "is generally considered an inappropriate vehicle for dismissing a claim based upon the statute of limitations."  Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012); see also Toyz, Inc.

v. Wireless Toyz, Inc., 799 F. Supp. 2d 737, 744 (E.D. Mich. 2011).  There is an exception to this rule if "the allegations in the complaint affirmatively show that the claim is time-barred." Cataldo, 676 F.3d at 547.  However, the allegations in the Complaint in this case do not reveal that this exception applies.  Plaintiff alleges that the submitted claims were facially valid, and that "[o]nly when the bills and supporting documentation are viewed together as a whole do the patterns emerge revealing the fraudulent nature of all the bills and supporting documentation." Compl. ¶ 10.  Therefore, Plaintiff claims that it "did not discover and could not have reasonably discovered that its damages were attributable to fraud until shortly before it filed" this action.  Id. Taking these allegations as true, as the Court must do for purposes of deciding a Rule 12(b)(6) motion, the statutes of limitations may not bar Plaintiff's claims.

Nor is the Court persuaded by Defendants' suggestion that Plaintiff's alleged failure to investigate the purportedly facially valid claims during the 30-day statutory period renders the statutes of limitations operable per se.  At this point in the litigation, questions of fact regarding Plaintiff's diligence and possible fraudulent concealment remain, which preclude applying the statutes of limitations at this time.  For example, it is unclear whether Plaintiff ever requested additional information, and, if so, whether Defendants truthfully provided it or committed further acts of fraud.  Furthermore, even if Plaintiff did act reasonably in not initially investigating the claims, a question of fact exists regarding whether the purportedly fraudulent scheme should have been discovered earlier in the nine-year period.

Therefore, given that the Court cannot affirmatively state that the statutes of limitations bar Plaintiff's claims based solely on the face of the pleading, the Court rejects Defendants' argument at this time.  See State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 246 F.R.D. 143, 150 (E.D.N.Y. 2007); State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc., No.

14-10266, 2014 WL 5427170, at *6-7 (E.D. Mich. Oct. 24, 2014) (declining to rule on same arguments raised at motion-to-dismiss stage); <u>Allstate Ins. Co. v. Halima</u>, No. 06-1316, 2009 WL 750199, at *4, 6 (E.D.N.Y. Mar. 19, 2009) ("On a motion to dismiss, the court cannot say definitively that an insurance company that receives thousands of insurance claims could not reasonably rely on facially valid claims submitted by a licensed professional corporation and accompanied by reports from licensed physicians.").  Defendants may re-raise this affirmative defense in the future if they believe discovery reveals that it still applies.

## G.  Declaratory Relief

Finally, in its Complaint, Plaintiff seeks a declaratory judgment that it is not responsible for claims made by Defendants that Plaintiff has not yet paid.  Compl. ¶¶ 107-108.  Defendants argue that the Court should dismiss Plaintiff's claim for declaratory relief.  Warren Defs. Br. at 44-47.  Defendants reiterate that Plaintiff's claims supposedly are nothing more than a series of no-fault payment challenges that Plaintiff seeks to consolidate into one federal claim, and, therefore, this Court should decline to exercise jurisdiction over this claim.  <u>Id.</u>  In support of this argument, Defendants highlight that: (i) a state court could decide these issues in a conflicting manner; (ii) the potential for such conflicting decisions could make Michigan's no-fault laws less clear; (iii) Plaintiff could have sought this same relief in state court, and is just trying to forum shop its arguments regarding the reasonableness of the bills; and (iv) this is an issue of state law that should be left to the state courts.  <u>Id.</u> at 46-47.

The Court concludes that exercising jurisdiction over Plaintiff's claim for declaratory relief is proper.  As Defendants recognize, jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is not mandatory.  <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 494-495 (1942).   Abstaining from issuing a declaratory judgment in an action seeking an opinion

regarding insurance coverage, which will impact litigation pending in another court, is generally sensible; however, there is no per se requirement prohibiting a federal district court from issuing such relief.  Allstate Ins. Co. v. Green, 825 F. 2d 1061, 1066 (6th Cir. 1987).

The Sixth Circuit has set forth a variety of factors for district courts to consider when determining whether to exercise jurisdiction under the Declaratory Judgment Act.   See Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000).   Nevertheless, as Plaintiff highlights, declining to exercise jurisdiction may be an abuse of discretion — even if all the factors set forth in Scottsdale weigh in favor of doing so — if "a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court must address."  Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n, 481 F.3d 414, 422 (6th Cir. 2007) (emphasis removed).  This is because, in such a case, "the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources."  Id.; see also Caspar v. Snyder, -- F. Supp. 3d --, 2015 WL 224741, at *19 (E.D. Mich. Jan. 15, 2015) (Goldsmith, J.) (declining to dismiss claim for declaratory relief, because, in part, this claim was "intertwined" with claim for injunctive relief).

Numerous courts in this District have used this reasoning in adjudicating a claim for declaratory relief where monetary damages also were sought.  See Employers Mut. Cas. Co. v. Reilly Plating Co., No. 08-12145, 2008 WL 4757315, at *5 (E.D. Mich. Oct. 29, 2008) (declining to refuse to exercise jurisdiction over request for declaratory judgment, even though the Scottsdale factors counseled in favor of doing so, because there was a counter-claim for monetary damages); IDS Prop. Cas. Ins. Co. v. Kasneci, No. 13-11233, 2014 WL 502137, at *6 (E.D. Mich. Feb. 7, 2014) (declining to dismiss claim for declaratory judgment, and declining to review the Scottsdale factors, because "[t]his Court must address Plaintiff's other claims

36

independent of Plaintiff's action under the Declaratory Judgment Act.") (emphasis in original); McKeen v. Cont'l Cas. Co., No. 10-10624, 2010 WL 3325200, at *3 (E.D. Mich. Aug. 19, 2010) ("Because Plaintiffs' complaint seeks relief outside of a declaratory judgment, the Court finds that dismissal and/or abstention is not warranted."); see also State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc., No. 14-10266, 2014 WL 5427170, at *10-11 (E.D. Mich. Oct. 24, 2014) (declining to dismiss declaratory judgment claim, because it was "inextricably dependent on and connected to the underlying substantive counts").

Here, Plaintiff seeks monetary damages in addition to declaratory relief. These claims for relief are "inextricably dependent on and connected to the underlying substantive counts." Plaintiff's success on its claim for monetary damages depends on the same, or nearly identical, allegations and proofs as its success on its claim for declaratory relief. The Court, thus, rejects Defendants' argument that it should dismiss this claim.

## V. CONCLUSION

For the foregoing reasons, the Court denies Defendants' motions to dismiss (Dkts. 17, 20), and grants Plaintiff's motion for leave to file supplemental authority (Dkt. 29).

SO ORDERED.

Dated: August 10, 2015            s/Mark A. Goldsmith
        Detroit, Michigan        MARK A. GOLDSMITH
                                 United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 10, 2015.

                                 s/Carrie Haddon
                                 Case Manager