UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

      Plaintiff,

v.                                                                                    Case No. 4:14-CV-11521
                                                                                           HON. MARK A. GOLDSMITH

WARREN CHIROPRACTIC
& REHAB CLINIC, P.C., et al.,

      Defendants.
_____/

**ORDER DENYING NON-PARTY E. WHITE & SON'S MOTION TO QUASH (Dkt. 81)
AND DENYING NON-PARTY APPLEBAUM & STONE, PLC'S
MOTION TO QUASH (Dkt. 88)**

**I.  BACKGROUND**

The underlying suit alleges that Defendants fraudulently obtained insurance proceeds from Plaintiff State Farm for treatment and transportation services purportedly provided to individuals, who were involved in motor vehicle accidents and eligible for Personal Injury Protection benefits ("No-Fault Benefits") under Plaintiff's insurance policies.  Compl. ¶ 1.  The treatment and transportation services were, allegedly, either unperformed or unnecessary.  Id. Defendants include a chiropractic business (Warren Chiropractic & Rehab Clinic, P.C. ("Warren")) and its chiropractors (Dr. John Muffareh & Dr. Keith Gover), as well as a patient transportation business (Priority Patient Transport LLC) and its owners (George Muffareh & Sharon Michelle Smith).  Id. ¶ 2.

Part of Defendants' alleged motivation to deceive Plaintiff directly involves the non-parties who filed the instant motions to quash.  Specifically, in addition to enriching themselves,

1

and in furtherance of the same, Defendants would provide diagnoses favorable to a personal injury suit, after being funneled patients by non-party personal injury firm Applebaum & Stone, PLC ("Applebaum"). Id. ¶ 18, 41, 79. Non-party E. White & Son, owned and operated by Ed White and his wife Sandra White, is a private investigation company, apparently employed by Applebaum and similar firms, which solicited people who had been in auto accidents and funneled them to the law firms and, ultimately, Defendants. Id. ¶ 43.

Plaintiff subpoenaed these non-parties pursuant to Federal Rule of Civil Procedure 45, seeking information regarding their relationship with Defendants and certain patients (Dkts. 81-2, 88-2). The non-parties moved to quash these subpoenas (Dkts. 81, 88). For the reasons that follow, these motions are denied.

## II. STANDARD OF DECISION

"A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." United States v. Blue Cross Blue Shield of Michigan, No. 10-14155, 2012 WL 4513600, at *5 (E.D. Mich. Oct. 1, 2012). Pursuant to Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Rule 26 was amended in 2015 to include the 'proportionality' requirement. However, the 2015 amendments do not alter the basic tenet that Rule 26 is to be liberally construed to permit broad discovery." Rui He v. Rom, No. 1:15-CV-1869, 2016 WL 909405, at *2 (N.D. Ohio Mar. 10,

2016). "Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances." Katz v. Batavia Marine & Sporting Supplies, Inc., 984 F.2d 422, 424 (Fed. Cir. 1993).

### III. ANALYSIS

#### A. The E. White & Son Subpoena

Ed White, acting as a principal for his company, is alleged to have been directly involved with the illegal solicitation of automobile accident victims on behalf of Applebaum. See Compl. ¶ 43. He is also alleged to have received payments from both Applebaum and various defendants. Pl. Resp. to White Mot. at 1, 7-8 (Dkt. 86). By convincing patients to sign contingency-fee agreements with Applebaum and others, which contingency fees were directly affected by the allegedly unperformed or unnecessary services billed, White allegedly formed an integral part of the scheme alleged by Plaintiff, despite not being named as a defendant. Id. Indeed, one patient testified that White — who was working on behalf of a different law firm at the time — "advised [her] to exaggerate her injuries and to falsely tell people she learned about Warren from the Yellow Pages." Id. at 10. His involvement with Defendants is alleged to violate Mich. Comp. Laws § 500.4511, which criminalizes a conspiracy to commit a fraudulent insurance act, although such violation is not brought as a cause of action here. Id. at 6.

The subpoena concerning E. White & Son Professional Services and Ed White was served on Citizens Bank (Dkt. 85-1). It requested the following:

> Any and all documents or records, in either paper or electronic form, including but not limited to account statements, cancelled checks, check images, deposit slips, withdrawal slips, records of wire transfers, signature cards, loans and/or loan applications, documents related to the opening and/or closing of any account, documents related to any reporting or filing with any governmental agency . . . relating to [the accounts of E. White & Son and Edward T. White].

3

> To the extent not covered above, any and all check images, cancelled checks, deposit slips, or records of wire transfers to or from Edward T. White or E. White & Son Professional Services, LLC . . . and the following individuals and entities:
>
> - John M. Mufarreh
> - Dr. Johnny Mufarreh Chiropractic, P.C.
> - J&R Properties LLC
> - Warren Chiropractic & Rehab Clinic, P.C.
> - Applebaum & Stone
> - Weiner & Associates
> - The Lobb Law Firm

Citizens Bank notified Ed and Sandra White of the subpoena (Dkt. 85-2), after which they filed their motion to quash (Dkt. 81).

The Whites' principal argument is that the requested materials, which essentially include all of their banking records, are not relevant, as they have "no connection to this case," and because the requested materials include "personal financial information" that is not connected to their relationship with Defendants. White Mot. at 3.

However, Plaintiff has demonstrated that the sought-after materials are relevant and proportional to the needs of its case. Plaintiff is investigating a scheme by which Defendants acquired clients for the purposes of billing their insurer for unnecessary or unperformed medical services. As the case is framed by Plaintiff — i.e., that the Whites and their business were directly involved in the insurance fraud scheme — the Whites' records potentially will illuminate the way the scheme operates; the extent of the scheme, including but not limited to the number of patients wrongfully treated and the amount of damages; and other entities involved in the scheme. These are bases for a finding of relevance. See, e.g., State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc., No. 12-11500, 2013 WL 10572229, at *3 (E.D. Mich. Aug. 13, 2013) (allowing discovery that will reveal "the connections between and among the named parties and

4

various non-parties who were also alleged to be part of the underlying conspiracy[], will measure the scope of the fraud, will reveal additional potential parties and witnesses, will show motive for the alleged conspiracy, and will help prove damages").

In addition to relevance, Plaintiff has established that the breadth of the information sought is "proportional the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiff's investigation into the materials already produced during discovery suggests that Defendants made payments to other entities, in furtherance of the alleged scheme, using various intermediaries. At the same time, direct, obvious transactional links between the Whites and Defendants are fewer than one might expect. See Pl. Resp. to White Mot. at 11-13 (no records of payments from Defendants to Mr. White, despite Mr. White's testimony that payments were made). The alleged use of intermediaries is designed to conceal identity of those paying, or being paid by, Defendants. In order to properly cross-reference payments made or received by Defendants with payments made or received by those helping to further Defendants' scheme, Plaintiff requires access to bank records beyond those transactions that solely identify the named Defendants.

The Whites' irrelevance argument is unavailing, because the evidence contradicts it. Whereas they claim that "Plaintiff has not presented any reasonable indication that [they] are, in any way, involved in the operation [of] Defendant's business in any meaningful or relevant way," White Mot. at 6, Mr. White's own deposition testimony confirms that he advertises for Warren, transports patients to Warren, and refers patients to Warren. Pl. Resp. to White Mot. at 11. Moreover, the testimony of at least one patient alleges that Mr. White advised her to exaggerate her injuries while treating with Warren and to lie about how she learned of Warren. Id. at 10. These refute the White's claims that they have no relevant connection to any of the Defendants, thus undermining the entire basis for their motion.

5

Also inadequate are the Whites' arguments that disclosure will cause them "undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "If the subpoenaed nonparty . . . asserts that disclosure would subject it to undue burden under Rule 45(d)(3)(A), it must show that disclosure will cause it a 'clearly defined and serious injury.'" In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234, 239 (E.D. Pa. 2014) (citation omitted); see also State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc., No. 12-11500, 2013 WL 10572229, at *3 (E.D. Mich. Aug. 13, 2013) ("[W]hile it appears that the financial information requested does fall into the category of confidential commercial information, . . . Defendants have not made a satisfactory showing that disclosure of that information, subject to an appropriate protective order, would be harmful."). The Whites fail to establish a clearly defined and serious injury in any way.

Finally, the Whites fail to support their claim that the requested financial information is somehow protected. Such support is required to succeed on a claim under Federal Rule of Civil Procedure 45. See Physiomatrix, Inc., 2013 WL 10572229, at *2 (no constitutional privacy interest in individuals' financial affairs); id. (declining to recognize common-law privacy interest in the same without pertinent citation).

In light of the fact the requested records are likely relevant to Plaintiff's case, as well as the fact that the request is proportional to the needs of Plaintiff's investigation, and because the Whites have made no specific showing that this request is unduly burdensome, their motion to quash is denied.

The Court is, however, sensitive to the privacy concerns one has in one's financial records, even if those interests are insufficient to quash a subpoena. See Keybank Nat'l Ass'n. v. Perkins Rowe Assocs., L.L.C., No. 09-497, 2011 WL 90108, at *3 (M.D. La. Jan. 11, 2011) ("[T]o the extent that the subpoenas require production of confidential or proprietary

6

information, the protective order . . . affords . . . sufficient protection from public disclosure."). Accordingly, on or before May 16, 2016, Plaintiff and counsel for the Whites shall jointly submit a proposed protective order with reasonable provisions for preventing the disclosure of the Whites' financial information for purposes, and to persons, unrelated to this litigation.. See Fed. R. Civ. P. 26(c)(1).

### B. The Applebaum & Stone Subpoena

Plaintiff also subpoenaed non-party Applebaum, demanding that it appear for a deposition (Dkt. 88-2). In a separate email, Plaintiff informed Applebaum of the topics it intended to explore at the deposition. That email stated:

- Applebaum & Stone's efforts to collect and produce responsive documents to State Farm's subpoena
- The relationship between the Applebaum & Stone firm and the Defendants in our case, including (a) the number of firm clients who have treated at Warren Chiropractic; (b) the firm's handling of first-party and third-party claims on behalf of clients who treated at Warren Chiropractic, including the distribution of settlement proceeds from such claims; and (c) communications with the Defendants relating to the treatment of State Farm insureds, including disability certificates
- Applebaum & Stone's relationship with investigator Ed White, including interviews of accident victims conducted by Ed White and payments to Ed White, as well as other individuals who performed similar services
- Applebaum & Stone's relationship with marketing businesses or referral services targeted to auto accident victims, including 411-PAIN, Motor City Accident Attorneys, [and] WCIS Media, MI Pro Consultants d/b/a 855-PAIN-LINE.

2/22/2016 Email (Dkt. 88-3).

Applebaum objected to the subpoena (Dkt. 88). Applebaum claims that the proposed discovery, as revealed by the email, "isn't relevant to the claims made against the Defendants" because its alleged relationships with marketing businesses and referral services "have nothing to do with the Defendants' treatment" of the patients. Applebaum Br. at 10. Applebaum also

7

claims that its alleged relationship with Mr. White "does not relate to" Defendants' treatment of patients. Id. Applebaum further highlights that those entities are not named as defendants. Id. at 13.

Like the Whites, Applebaum argues that the subpoena should be quashed because it "requires disclosure of privileged or other protected matters and no exception or waiver applies, and that the subpoena "subjects [it] to undue burden." Id. at 11 (quoting Fed. R. Civ. P. 45(d)(3)(A)).[1]

For the same reasoning that was applicable to the Whites' motion, however, the Court denies Applebaum's motion to quash. All of the topics that Plaintiff indicates that it intends to explore are relevant to the structure of the scheme, the extent of the scheme, the participants in the scheme, and the extent of damages. See Physiomatrix, Inc., 2013 WL 10572229, at *3.

Regarding Applebaum's claim that the subpoena subjects it to undue burden and/or will require the disclosure of privileged or other protected matters, Applebaum fails to make a convincing argument that it will be harmed. Its sole allegation of harm is that the deposition testimony will reveal information "about Applebaum's internal practice that can later be utilized [by Plaintiff] in ongoing and future litigation with Applebaum's clients, or perhaps future litigation with Applebaum itself." Applebaum Br. at 12. At oral argument, however, Applebaum was unable to articulate just how Plaintiff's expected inquiries could, even in theory,

---

[1] In the alternative to quashing the subpoena, Applebaum seeks to restrict its scope. If Plaintiff is permitted to question Applebaum regarding its relationship with Mr. White, Applebaum asserts that "[a]ny questions regarding non-party Ed White should be limited to his alleged relationship with the Defendants and further limited to the eight cases previously identified as relevant to this case." Applebaum Br. at 13. Regarding Defendants, Applebaum asks that the Court "at a minimum limit the scope of the deposition to Applebaum's relationship or communications with Defendants regarding the eight specific cases identified on Exhibit 1 of the prior subpoena." Id. at 13-14. However, because of the far-ranging nature of the alleged scheme and the alleged role played by Applebaum, this request for relief in the alternative is denied.

provide an advantage to Plaintiff in this or future litigation. And Applebaum, of course, remains entitled to refuse to answer questions when the attorney-client privilege or the work-product doctrine applies.

In State Farm Mutual Automobile Insurance Co. v. Physiomatrix, No. 12-cv-11500, 2013 WL 10936871, at *8 (E.D. Mich. Nov. 26, 2013), which is cited extensively by Applebaum, the court, faced with very similar facts, limited the discovery to the relationships between the law firms and the defendants, but prohibited discovery into how the law firms got their clients. Indeed, that opinion held that "whether or not [the law firms'] solicitation was legal or ethical is once-removed from the case at hand." Id.

However, while the alleged scheme in Physiomatrix was similar to the case at bar, it was not identical.[2] In that case, the "boundary of relevance" extended only to information relevant to an alleged "quid pro quo" relationship between the defendant medical care providers and the personal injury law firms; there was no real link alleged between the referral services and the scheme. Id. Here, Plaintiff alleges that these other entities are in on the scheme, in that they referred callers directly to the medical care providers allegedly in league with the same law firms to which the patients were referred. See, e.g., Pl. Resp. to Applebaum Mot. at 12 n.4 ("[A] business associated with the 411-PAIN hotline . . . steered accident victims to Warren, Applebaum, and [another law firm]."). Given that the referral services are incentivized by the patient's recovery from lawsuit, see id. at 14, this supports an inference that the referral services were aware of an improper, reciprocal relationship between the law firms and the Defendants.

### IV. CONCLUSION

---

[2] And, in any case, a district court case is non-binding on this Court. Smith v. Astrue, 639 F. Supp. 2d 836, 842 (W.D. Mich. 2009).

9

For the reasons stated above, the Court denies the motion to quash filed by non-party E. White & Son Professional Services, LLC, Ed White, and Sandra White (Dkt. 81). However, the Court orders those non-parties and Plaintiff to jointly submit, by May 16, 2016, a protective order with reasonable provisions for preventing the disclosure of the Whites' financial information for purposes, and to persons, unrelated to this litigation.

The Court denies the motion to quash filed by Applebaum & Stone, PLC (Dkt. 88).

SO ORDERED.


Dated: May 11, 2016         s/Mark A. Goldsmith
Detroit, Michigan           MARK A. GOLDSMITH
                            United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 11, 2016.

                            s/Karri Sandusky
                            Case Manager